

FILED

1   Maria C. Garzon
2   4142 Felipe Lane
    Simi Valley, CA 93063
3   In Common Law In Pro Per
    805-581-6054
4

5                   UNITED STATES DISTRICT COURT

6                  CENTRAL DISTRICT OF CALIFORNIA

7

8

9   Maria C. Garzon, an individual          )Case No. 2:11-CV-00527-SVW-(PJW)
                                            ) FIRST AMENDED
10                                          )COMPLAINT FOR:
                                            )(1)  VIOLATION OF CALIFORNIA
11          Plaintiff,                      )     ROSENTHAL ACT;
                                            )(2)  QUIET TITLE;
12          vs.                             )(3)  PREDATORY LENDING PRACTICES;
                                            )(4)  DECLARATORY RELIEF;
13  B. F. SAUL MORTGAGE CO., CHEVY          )(5)  VIOLATION OF TRUTH AND LENDING;
    CHASE BANK F.S.B., CAPITAL ONE;         )(7)  VIOLATION OF RESPA (12 U.S.C § 2605);
14  SERVICE LINK, CAL-WESTERN               )(8)  WRONGFUL FORECLOSURE
    RECONVEYANCE CORP., MORTGAGE            )(9)  ODER TO SET ASIDE TRUSTEES SALE;
15  ELECTRONIC REGISTRATION SYSTEMS         )(10) CANCELLATION OF TRUSTEES DEED;
    INC. (MERS) a suspended California      )(11) UNFAIR BUSINESS PRACTICES (CAL.
16  Corporation and Does 1-10 inclusive,    )     B&P CODE § 17200)
                                            )(12) FRAUD
17          Defendants.                     )(13) INJUNCTIVE RELIEF; REQUEST FOR AN
                                            )     EVIDENTIARY HEARING and JURY
18                                          )     DEMANDED PER THE 7TH
                                            )     AMENDMENT, UCC 3-501(a), UCC 3-
19                                          )     501(b)(2); 42 USC 1981, 1983, 1985; 18
                                            )     USC 241, 242, AND 1001
20                                          )
                                            )
21                                          )
                                            )
22                                          )
                                            )
23                                          )
                                            )
24                                          )
                                            )
25                                          )
                                            )
26                                          )
                                            )
27                                          )

28

                                                                                    1

1.     Plaintiff  Maria C. Garzon (hereinafter "plaintiff") asks that our legal system bring the following Defendants to justice: B. F. SAUL MORTGAGE CO., CHEVY CHASE BANK F.S.B., CAPITAL ONE; SERVICE LINK, CAL-WESTERN RECONVEYANCE CORP.,  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. "(MERS)" and Does 1-10 et al.,(hereinafter "defendants").  Plaintiff alleges defendants deceived her from the beginning of her loan, intentionally inflicting emotional distress, and has directly violated Truth in Lending Act, Rosenthal Act, RESPA, RICO and TILA. Plaintiff further believes that Capital One N.A never had any intention of modifying her loan.

## JURISDICTION AND VENUE

2.     Plaintiff claims the Defendants have violated many state and federal statutes; including but not limited to; Truth in Lending Act., Rosenthal Act, RESPA, RICO and TILA. The Plaintiff also believes the Defendants have committed fraud and exorcised deceptive lending  practices,

3.     The real property which is subject to this complaint is located within the County of Ventura.

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367, 18 U.S.C. §1964(c), and 15 U.S.C. § 1640(c).

5.     Venue is proper in the Central District of California under  28 U.S.C. §1391(b).

## THE PARTIES

6.     Plaintiff,  Maria C. Garzon currently resides at "subject property" ; 4142 Felipe Lane, Unit D.,  Simi Valley, CA 93063, located in Ventura County.

7.     The Lender is **B.F. SAUL MORTGAGE COMPANY** doing business at: 7501 Wisconsin Avenue, Bethesda Maryland 20814.

8.   The Servicer **CHEVY CHASE BANK F.S.B** doing business at: 6151 Chevy Chase Drive, Laurel Maryland 20707.

9.   The Servicer **CAPITAL ONE N.A**. doing business at: 15000 Capital One Drive, Richmond, Virginia 23238. merged with CHEVY CHASE BANK F.S.B. 2009.

10.  **CAL-WESTERN RECONVEYANCE CORP**. doing business at: 525 East Main Street, El Cajon, CA 92022-9004. Sent the Notice of Default and Notice of Trustee's sale.

11.  **SERVICELINK** doing business at: 345 Rouser Road, Corapolis, Pennsylvania 15108. Is stamped on Notice of Default and Assignment of Deed of Trust.

12.  **"MERS"** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC. doing business at: 1901  East Vorheez St. Suite C, Danville, ILL. 61834.  .

13.  Plaintiff is ignorant of the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 10, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are ascertained..

14.  Plaintiff claims and believes the Defendants named in this suit herein above were acting as agents and/or employees and/or in concert with each, and were responsible for intentionally misleading, and deceiving her throughout the time of her foreclosure.

## STATEMENT OF FACTS

15.  On or about March 15, 2007, Plaintiff purchased said property for $503,000. Plaintiff became the owner of legal title. The GRANT DEED,  was recorded on March 20, 2007 (exhibit E).  She acquired the loan with the help of CFC Mortgage (hereinafter Broker). During the time of purchase Plaintiff was 71 years of age, well past retirement, but in good health and still working full for a non profit organization

full time as Executive Assistant making income of $50,000/year.  Broker advised she can afford property if she agrees to put money down and agrees to taking an adjustable loan. Plaintiff puts $80,000 cash down on the house, costing $503,000. Plaintiff had some credit card debt and that debt was added onto loan financed for "said property". After closing costs the amount financed was $ 451,000. CFC Mortgage advised Plaintiff the lender was B.F. Saul Mortgage Company and it would be wise to refinance after two years because loan would adjust thus making it difficult for her to keep her payments under $2,000 a month.

16.    On or around month of June 2009 Plaintiff contacted SERVICER identified as Defendant CHEVY CHASE BANK F.S.B.,  attempting to discuss loan modification or refinancing options as recommended by broker when buying house two years ago. Defendants representative advised Plaintiff that her loan is current and bank will not consider you for a modification unless you are in the rears. The representative then advised a packet would be coming in the mail to fill out completely and send back to department. Approximately one month later when Plaintiff contacted defendant Chevy Chase prior to mailing package back and was told to contact new loan servicer Capital One. The representative advised her that her loan is current and that Capital One usually only helps people when they are in rears, and have minimal debt. She said to call back in a few months while department is undergoing changes they are not processing any loan modifications right now. So Plaintiff went to an outside source a "Loan Modification Specialist", who promised her case was solid and most all of their clients have had favorable turnouts. Three months later and still nothing has been resolved so Plaintiff fired them and went with another so called specialist another 3 months goes by and nothing has been resolved. So plaintiff contacts Capital One a second time to try and negotiate something as time is running out and loan was due to increase again in 6 more months plus she stopped making payments to assure that she would qualify for a loan modification. The representative

at Capital One sent a new loan mod. Package.  Plaintiff asked what can she do to guarantee she would qualify for a loan modification because her loan was due to adjust and would put her into a financial hardship. Representative inquired if anybody was renting at the said property and Plaintiff advised not yet. So representative advised would send out another modification package. Plaintiff resubmitted paperwork a few weeks later, during which time her current employer advised their staff that payroll needed to be reduced in order for company to stay afloat all employees paychecks would be reduced by 25% now plaintiff was making $ 37,500. At the suggestion of Capital One,  Plaintiff stopped making payments and rented out the couch, and the bedroom increasing her income from $ 2000 a month to $ 4000. Each renter agreed to sign a 5 year lease agreement. (The loan mod. Packages are like those when purchasing a house you must submit 3 months of bank records, tax returns, any debt records etc...) The paperwork filled out reflected the above figures and when discussing this with Capital One, they advised that other forms needed to be filled out. They sent another package which plaintiff resubmitted When Capital One was contacted to discuss what options were available the "Loss Mititgation Dept." was now called the Green Team and the representatives said they would get back to her after the Underwriting department has determined what she would qualify for and during that process plaintiff received a NOTICE OF DEFAULT (exhibit A) sent by Cal-Western Reconveyance Corp. and recorded October 27,2009.

17.    Plaintiff contacted Defendant Capital One and asked them what this Notice of Default was about and they did not have a record of this. Plaintiff was referred to another representative who assured her not to worry and to resubmitt another package and she should be contacted in a few days with their answer.

18.    ASSIGNMENT OF DEED OF TRUST (exhibit B) was recorded on 11-25-2009. Identifies trustor as MARIA C. GARSON (who is that person?) This assignment is not clear as to who transferred any Deed of Trust to Capital One. Capital

One was a loan servicer why would anything be transferred to a servicer? This assignment was signed by Joe Krasovic employee of "Mers." "Mers" has no jurisdiction to assign anything to anybody. This document was notarized a month prior to being recorded.  There is no recorded "assignment of Beneficiary" or "transfer of Beneficial interest" under the Deed of Trust was recorded March 20,2007.

19.    Almost seven months later Plaintiff has not heard from Capital One and NOTICE OF TRUSTEE'S SALE (exhibit C) is received on or around June 14, 2010 but not recorded. This letter indicates CAL-WESTERN RECONVEYANCE CORPORATION was appointed "trustee" under the original *Deed of Trust*.

20.    The original DEED OF TRUST (exhibit D)recorded on March 20,2007, the "trustee" was recorded as Chevy Chase Bank, F.S.B. and "MERS" is a separate corporation that is solely acting as a nominee for lender and Lender's successors and assigns. **"MERS"**, is the beneficiary under the Security Instrument.

21. TRUSTEES DEED UPON SALE was recorded on November 18, 2010, at the request of Service Link? The letter says CAL-WESTERN RECONVERYANCE COPR. Now the trustee grants or conveys said property to CAPITAL ONE, N.A.at auction on October 29, 2010 for $ 292,500.00 cash. I believe a credit bid is more likely. Again they commit perjury by stating cash monies was given for said property. Furthermore the document states the conveyance is pursuant to powers in "Trustee, Successor Trustee, or Substituted Trustee". In the original Deed of Trust non of the assigned parties that do have an interest in property, are listed anywhere on this document.

## CLAIM 1

### (Violated Truth in Lending Act.U.S.C.§1601 et seq.)

### Against Defendants Capital One NA, MERS, BF Saul Mortgage.

22.    Plaintiff incorporates here each and every allegation set forth below.

23.    The loan transaction at issue is a consumer credit transaction subject to the

provisions of TILA. Defendants listed above are "creditors" as that term is defined by 15 U.S.C. §1602. The transaction between Plaintiff and Defendants was a consumer loan transaction wherein the Defendants extended credit to the Plaintiffs and such credit was secured by an interest purportedly held by the Defendants in the Property

24.    As a consumer credit transaction, the Defendants were required to provide to Plaintiff mandatory to Truth in Lending disclosure statements and notice of the borrower's right to rescind, specifying the date on which the three-day rescission period expires. If the lending institution fails to provide the rescission information, the borrower may rescind the loan within three years after it was consummated.

25.    In the course of the initial transaction described herein, Defendants violated TILA in numerous was, including but not limited to: failing to provide required disclosures prior to consummation of transaction, failing to make required disclosures clearly and conspicuously in writing; failing to timely deliver to Plaintiff certain notices required by statute; placing terms prohibited by statute in to the transaction; failing to disclose all finance charge details and how the rate is calculated and finance charges accrue with relation to amount borrowed.

26.    As a result of Defendant's misconduct, Plaintiff has suffered emotional and physical stress related disorders which has increased her medical expenses but more importantly taken years off her life.

## CLAIM 2

### (Violated "RESPA")

### Against all Defendants

27.    Plaintiff incorporates here each and every allegation set forth above.

28.    The loan transaction between Plaintiff and Defendants is a mortgage loan covered by RESPA.

29.    A violation of RESPA is also made unlawful under California state law by Financial Code section 50505, which states: "Any person who violates any provision

of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

30.     Plaintiff is not certain at this time exactly which of Defendants was actually the servicer of the loan at any given time, although she believed that the loan servicer was Capital One, N.A. at the time of the foreclosure.  However, due to the conspiratorial nature of the misdeeds alleged herein, and also due to Defendants' general failure to properly advise Plaintiff as to the roles and identities of the various entities that were purportedly handling her loan at any given time, these allegations are made as to all Defendants.

31.     Defendants violated RESPA at the time of closing on the sale of the Property by failing to correctly and accurately comply with disclosure requirements.

32.     Plaintiff is informed and believes and thereon alleges that Defendants have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. §2605.

## CLAIM 3

### (California Rosenthal Act)

### Against all Defendants

33.     Plaintiff incorporates here each and every allegation set forth above.

34.     Defendants' actions constitute a violation of the Rosenthal Act in that they threatened to take actions not permitted by law, including but not limited to: foreclosing upon a void security interest;  foreclosing upon a note of which they were not in possession nor otherwise entitled to payment;  falsely stating the amount of a debt;  increasing the amount of a debt by including amounts that are not permitted by law or contract;  and using unfair means in an attempt to collect a debt.

35.     Defendant's actions have caused Plaintiff actual damages, including but not limited to:  severe emotional distress, including but not limited to: loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and

depression.

36.   As a result of Defendant's violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof.

## CLAIM 4

### (Quiet Title)

### Against all Defendants

37.   Plaintiff re-alleges and incorporates by reference all allegations set forth previously as though set forth herein. The defendant(s) heretofore mentioned in this complaint, both participating and non-participating, culminated such acts of fraud and deceit by assisting with affecting the aforementioned and invalid trustee's deed, which illegally transferred title in the real property, which is the subject matter of this action, from the Plaintiff's name to the Defendant(s) name, and that at the time of the last overt act of such fraud and deceit occurred, defendant managed to illegally record title to the subject property.

38.   Plaintiff desires and is entitled to a judicial declaration quieting title as of October 29, 2010, the date on which the loan transaction was consummated.

## CLAIM 5

### (Wrongful Foreclosure)

**Against Defendants:  B.F. Saul Mortgage, Chevy Chase Bank, Capital One N.A. and Cal-Western Reconveyance Corp.**

39.   Plaintiff incorporates here each and every allegation set forth above.

40.   California Commercial Code section 3301 specifically identifies the persons who are entitled to enforce a security interest, such as instituting a foreclosure sale under a deed of trust.  The statute is exclusive rather than inclusive in nature and those who are not identified do not have the right to enforce such an interest.

41.   Plaintiff is informed and believes and thereon alleges that Defendants B.F. Saul Mortgage, Chevy Chase Mortgage, Capital One N.A., nor Cal-Western Reconveyance Corp. were not and are not in possession of the Note, and are not

otherwise entitled to payment.  Moreover, Plaintiff is informed and believes and thereon alleges that said Defendants are not "person(s) entitled to enforce" the security interest on the Property, as that term is defined in Commercial Code section 3301.

42.   In the Notice of Trustee's Sale, Defendant Cal Western claimed that it was the holder of the beneficial interest under the Deed of Trust as of March 20,2007. Plaintiff is informed and believes and thereon alleges that such claim was false, and said defendants had reason to know that such claim was false.  Moreover, Plaintiff is informed and believes and thereon alleges that said defendants were not in possession of the Note, and were not entitled to enforce the security interest on the Property.

43.   Said Defendants also failed to properly record and give notice of the Substitution of Trustee which is not known when or if there was one, as provided by California Civil Code section 2934a, subsection (b).  One purpose of the requirements set forth in this code section is to inform trustors of the details of alleged defaults and foreclosure proceedings.  It follows that trustors who are not properly informed of a substitution of trustee cannot exercise their rights to investigate the circumstances of the foreclosure proceedings.  Indeed, in the instant action, Plaintiff sent a Qualified Written Request to Capital One N.A., but it is still not clear whether Capital One N.A. or someone else entirely was the party to whom the request should have been addressed at the time.  The fact that Capital One N.A. did not acknowledge receipt of the request in the time period allowed by law, nor did Capital One N.A. ever provide the information and explanations requested, raises the question of whether the request might have been better addressed to another party.

44.   Said Defendants did not have the right to foreclose upon the Property under the law.  Even assuming, arguendo, that Defendants did have some right to enforce the security interest, the procedures used violated statutory requirements governing non-judicial foreclosure sales.

45.   As a direct and proximate result of said Defendants' wrongful actions,

Plaintiff has suffered damages, including, but not limited to:  direct monetary loss; consequential damages; and emotional stress.

46.     In committing the wrongful acts alleged herein, said Defendants acted with malice, oppression and fraud.  Said Defendants' willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct and deter such misconduct in the future.

## CLAIM 6

### (To Set Aside Trustee Sale)

### Against Defendants B.F. Saul Mortgage, Chevy Chase Mortgage and Capital One N.A.

47.     Plaintiff incorporates here each and every allegation set forth above.

48.     The foreclosure sale conducted by Cal Western at the direction of Capital One N.A. was improperly held and the assignment of Deed of Trust was wrongfully executed, delivered and recorded, in that MERS did not have jurisdiction to assign anything to anyone. Who was not the holder of the Note?  Moreover, the Notice of Default, which was executed and recorded by Cal Western Reconveyance Corp. & Servicelink forgot to file a "Substitution of Trustee", this would mean that Cal-Western & Servicelink was not authorized to act as a beneficiary, or agent or trustee or anything under the deed of trust.  B.F. Saul Mortgage was the current holder of the beneficial interest under the Deed of Trust and the obligations secured thereby as of the date of that instrument.  This contradicts Capital One N.A.'s apparent assertion of its status as the beneficial interest at that time, and generally adds to the confusion consistently created by Defendants throughout the course of the events described herein.

49.     Said Defendants' actions were contrary to law and in violation of the duties and obligations of the purported beneficiary and purported trustee to Plaintiff.

50.     Said Defendants' actions have caused loss and damage to Plaintiff in that

11

Plaintiff has been wrongfully deprived of legal title by forfeiture and is currently subject to forcible eviction at any time. Accordingly, the Trustee's Sale should be set aside.

## CLAIM 7

### (Cancellation of Trustee's Deed)

### Against Defendants B.F. Saul Mortgage, Chevy Chase Mortgage and Capital One N.A.

51.   Plaintiff incorporates here each and every allegation set forth above.

52.   Defendant Capital One N.A. claims an estate or interest in the Property adverse to that of Plaintiff, but Capital One N.A.'s claims are without any right. Capital One N.A. has no estate, title nor interest in the Property.

53.   Capital One N.A.'s claims are based upon the Trustee's Deed, purporting to have been executed by Cal Western Reconveyance and delivered to Capital One N.A. on October 29, 2010, and purporting to convey the Property to Capital One N.A..

54.   Although the Trustee's Deed may appear valid on its face, it is invalid, void and of no force or effect regarding Plaintiff's interests in the Property. The interest in the Property claimed by Capital One N.A., based on the Trustee's Deed, is a cloud on Plaintiff's title in and to the Property and tends to depreciate the market value of the Property, restricts Plaintiff's full use and enjoyment of the Property and hinders Plaintiff's right to unrestricted alienation of the Property.

55.   As a result of the execution, delivery and recordation of the Trustee's Deed, Plaintiff has suffered and continues to suffer loss and damages in an amount to be determined at trial. Moreover, if the Trustee's Deed is not delivered and cancelled, Plaintiff will suffer further serious and potentially irreparable harm.

## CLAIM 8

### (Civil Conspiracy)

### Against all Defendants

56.     Plaintiff incorporates here each and every allegation set forth above.

57.     Plaintiff is informed and believes, and thereon alleges that Defendants conspired and agreed to implement a scheme to defraud and victimize Plaintiff through the predatory lending practices and other unlawful acts alleged herein.

58.     Plaintiff is informed and believes, and thereon alleges that Defendants did the acts and things alleged herein pursuant to and in furtherance of their conspiracy to defraud and victimize Plaintiff.

59.     Plaintiff is informed and believes that Defendants sued herein under fictitious names in furtherance of the conspiracy and/or lent aid and encouragement to their co-conspirators and/or ratified and adopted the acts of their co-conspirators, and are thus jointly and severally liable for all harm to Plaintiff resulting from the conspiracy.

60.     As the direct and proximate result of Defendants' conspiracy to defraud and victimize Plaintiff, Plaintiff has suffered damages, including, but not limited to: direct money loss; consequential damages; and emotional distress.

61.     In conspiring to defraud and victimize Plaintiff, and in committing the wrongful acts alleged herein, Defendants acted with malice, oppression, and fraud, thus justifying an award of exemplary damages in an amount sufficient to punish their wrongful conduct and deter such misconduct in the future.

## CLAIM 9

### (Unfair Business Practices – California Business & Professions Code §17200)
### Against all Defendants

62.     Plaintiff incorporates here each and every allegation set forth above.

63.     Plaintiff is informed and believes and thereon alleges that Defendants committed unlawful, unfair, and/or fraudulent business practices, as defined by California Business and Professions Code section 17200, by engaging in the unlawful, unfair, and fraudulent business practices alleged herein.

64.     As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

65.     Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

66.     Plaintiff further seeks restitution, disgorgement or sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## CLAIM 10

### (RICO – 18 U.S.C. §1961 et. Seq.)

### Against all Defendants

67.     Plaintiff incorporates here each and every allegation set forth above.

68.     Capital One N.A. is an enterprise engaged in and the activities of which affect interstate commerce.

69.     Defendants B.F. Saul Mortgage, Chevy Chase Mortgage, Capital One N.A., Service Link, Cal-Western Reconveyance and Mortgage Electronic Registration Systems are persons within the meaning of 18 U.S.C. §1961(3), and as persons associated with Capital One N.A., conducted and participated directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. §1962(c).

70.     The predicate acts which constitute this pattern of racketeering activity were part of scheme to wrongfully foreclose upon the Property without legal right, and therefore acquire title to the Property through deception and fraud, for the profit of the enterprise as described herein.  For the purpose of executing this scheme, the Defendants placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to:  default and foreclosure

related notices.  These notices were false, misleading, and contrary to law, as described herein, and were deliberately designed to compel Plaintiff either to part with large sums of money or to abandon the Property, for the profit of the enterprise.

71.    For the purpose of executing this scheme to defraud Plaintiff and obtain money by means of false pretenses, Defendants also transmitted and received messages by wire, including but not limited to telephone and internet communications.  In such communications, Defendants sought to convince Plaintiff either to part with large sums of money or to abandon the Property, for the profit of the enterprise, asserting the falsehood that Defendants had the right to foreclose upon the security interest in the Property.

72.    These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. §1961(5).

73.    Plaintiff was injured by reason of this violation of 18 U.S.C. §1962, in that as a direct and proximate result of Defendants' complained of acts, Plaintiff has suffered and continues to suffer damages, including but not limited to:  monetary damages and emotional distress, in an amount to be proven at trial.

74.    By reason of the Defendants' violation of 18 U.S.C.A. §1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. §1964(c), to threefold the damages sustained, costs of suit, and reasonable attorneys fees.

## CLAIM 11

### (Fraud)

### Against all Defendants

75.    Plaintiff incorporates here each and every allegation set forth above.

76.    As alleged herein, Defendants, and each of them, have made several representations to Plaintiff with regard to important facts.

77.    These representations made by Defendants were false.

78.   Defendants knew that these representations were false when made, or these representations were made with reckless disregard for the truth.

79.   Defendants intended that Plaintiff rely on these representations.

80.   Plaintiff reasonably relied on said representations.

81.   As a result of Plaintiff's reliance, she was harmed and suffered damages. Plaintiff's reliance on Defendants' false representations was a substantial factor in causing Plaintiff's harm.

82.   Defendants are guilty of malice, fraud or oppression, as defined in California Civil Code section 3294, and Defendants' actions were malicious and done willfully, in conscious disregard of the rights and safety of Plaintiff, in that the actions were calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter future misconduct.

83.   Moreover, if Plaintiff were forced to move from her home, it would subject her to irreparable harm of public humiliation and loss of reputation in the community in which she has lived for over 15 years. If the eviction proceeds, Plaintiff would be forced to live in a homeless shelter (if there is space) or out on the street. Reviewing the fact that at every stage of these events from loan origination to the foreclosure sale, Defendants have misled Ms. Garzon and acted in her detriment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and an order against Defendants as follows:

A.    That judgment be entered in her favor and against Defendants.

B.    For an order requiring PTI to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of this action.

C.    For an order and judgment stating that the Deed of Trust and the Trustee's Deed are adjudged void and of no legal force and effect and shall be cancelled, stricken and/or rescinded forthwith.

Complaint

D.      For a temporary restraining order, preliminary and permanent injunction directing the Ventura County Sheriff's Department to refrain from executing any lockout order with respect to the Property

E.      For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting under or in concern with them, from collecting on the subject loan and from causing the Property to be sold or assigned to a third party.

F.      For an order stating that Defendants engaged in unfair business practices.

G.      For an order stating that the Deed of Trust, Notice of Default, Notice of Trustee's Sale and Trustee's Deed constitute slander of title to Plaintiff and the Property.

H.      For an order and judgment quieting title to the Property.

I.      For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices.

J.      For compensatory and statutory damages, attorneys' fees and costs according to proof at trial.

K.      For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct.

L.      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

83.     Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Respectfully submitted,

Dated: _May 9, 2011_

_Maria C. Garzon_
Sign name here

By: _MARIA C. BARZON_
Print name here

Plaintiff in Pro Per

17

## EXHIBITS

A.    Notice of Default

B.    Assignment of Deed of Trust

C.    Notice of Trustee's Sale

D.    Deed of Trust

E.    Grant Deed

F.    Trustee's Deed Upon Sale

ServiceLink

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

*1247199-11*   *NODXR*
Trustee Sale No. 1247199-11

```
20091027-00175582-0  1/2
Ventura County Clerk and Recorder
James B. Becker, Assistant
10/27/2009 08:00:00 AM
361311 $15.00 MA
```

Space Above This Line For Recorder's Use

Loan No. XXXXXX5533  Ref: GARZON, MARIA

# NOTICE OF DEFAULT  (240123)

## IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $8,372.90 as of October 23, 2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

CAPITAL ONE, N.A.

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004  CA  92022-9004
(619)590-9200

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.**

Page 1 of 2

EXHIBIT A

· Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

---

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated March 15, 2007 executed by

**MARIA C GARZON, AN UNMARRIED WOMAN**
    as trustor, to secure certain obligations in favor of

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR B. F. SAUL MORTGAGE COMPANY**
    as beneficiary

recorded as document 20070320-00058670 on March 20, 2007 in book XXX page XXX official records in the office of County Recorder
of VENTURA County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $451,800.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Failure to pay the monthly payment due June 1, 2009 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.**

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

T.S. 1247199-11
Dated:        October 24, 2009          **CAL-WESTERN RECONVEYANCE CORPORATION**
                                        ServiceLink, as agent

                            Signature By _____
                                            ZARAH DECLARD

Recording Requested by
Service...

Recording Requested By
And When Recorded Mail To:

CAPITAL ONE, NA
6151 CHEVY CHASE DRIVE
LAUREL MD 20707



20091125-00191231-0   1/1
Ventura County Clerk and Recorder
James B. Becker, Assistant
11/25/2009 08:00:00 AM
369380 $12.00 MA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
CAPITAL ONE, N.A.
all beneficial interest under that certain deed of trust dated March 15, 2007, executed by
MARIA C GARSON, AN UNMARRIED WOMAN, trustor, to CHEVY CHASE BANK, F.S.B, trustee,
and recorded as Instrument No. 20070320-00058670 on March 20, 2007 in book XXX page XXX, of Official
Records in the County Recorder's office of VENTURA County, CALIFORNIA describing land therein as

COMPLETELY DESCRIBED IN SAID DEED OF TRUST

together with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

10-23-2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.,
AS NOMINEE FOR B. F. SAUL MORTGAGE COMPANY

**Joe Krasovic, Asst. Sec.**

State of CALIFORNIA    )
County of SAN DIEGO    )
On  10-27-09            before me,     **Mary J. Statham**                ,
a Notary Public, personally appeared     **Joe Krasovic**            ,

... proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
... instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal                     (Seal)

Signature _____

MARY J. STATHAM
COMM. # 1646046
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Feb. 18, 2010

COPY

EXHIBIT B

35

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

APN: **616-0-190-225**

Trustee Sale No. **1247199-11**                      Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

LOAN NO: **XXXXXX5533**                         TRA:**009061**
REF: **GARZON, MARIA**                           **UNVER**
Property Address: 4142 FELIPE LANE UNIT D,  SIMI VALLEY  CA  93063

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **March 15, 2007**.  UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER

On **June 14, 2010**, at **11:00am**, **CAL-WESTERN RECONVEYANCE CORPORATION**, as duly
appointed trustee under and pursuant to Deed of Trust recorded **March 20, 2007**, as Inst. No. **20070320-
00058670**, in book **XXX**, page **XXX**, of Official Records in the office of the County Recorder of
**VENTURA** County, State of **CALIFORNIA** executed by:

### MARIA C GARSON, AN UNMARRIED WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**AT THE MAIN ENTRANCE TO THE GOVERNMENT CENTER HALL OF
JUSTICE, 800 SOUTH VICTORIA AVENUE
VENTURA CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

*Exhibit C*

NOS.DOC                              Rev 05/11/10                         Page 1 of 2

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1247199-11

The street address and other common designation, if any, of the real property described above is purported to be:
**4142 FELIPE LANE UNIT D**
**SIMI VALLEY  CA  93063**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$520,212.78**.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923.53(k)(3) declares that it has not obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 that is current and valid on the date this notice of sale is recorded. The time frame for giving a notice of sale specified in Civil Code Section 2923.52 subdivision (a) does apply to this notice of sale.**

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm **(619)590-1221**
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON  CA  92022-9004**

Dated: May 13, 2010                    CAL-WESTERN RECONVEYANCE CORPORATION

By: _S/ AUTHORIZED SIGNATURE_____
       Authorized Signature

Recording Requested By:

Return To:
Document Control Dept.
7501 Wisconsin Avenue
Bethesda, MD 20814

Prepared By:
Monica Garcia, Loan Closer
B. F. Saul Mortgage Company
333 South Anita Drive
ORANGE, CA 92868

───────────────────[Space Above This Line For Recording Data]───────────────────
PURCHASE MONEY
# DEED OF TRUST

MIN 1000153-0567005533-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March  15, 2007
together with all Riders to this document.
(B) "Borrower" is MARIA C GARZON, AN UNMARRIED WOMAN

Borrower's address is 4514--B LUBBOCK DR, SIMI VALLEY, CA 93063
Borrower is the trustor under this Security Instrument.
(C) "Lender" is B. F. Saul Mortgage Company

Lender is a corporation
organized and existing under the laws of the State of Maryland

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01

VMP -6A(CA) (0207).01
Page 1 of 15                    Initials:_____

VMP Mortgage Forms, Inc.

14995851                                                      567005533

Exhibit D

Lender's address is 7501 Wisconsin Avenue, Bethesda, MD 20814

(D) "Trustee" is Chevy Chase Bank, F.S.B.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 15, 2007
The Note states that Borrower owes Lender Four Hundred Fifty One Thousand Eight
Hundred and 00/100                                                                          Dollars
(U.S. $ 451,800.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2047

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

VMP -6A(CA) (0207).01                    Page 2 of 15                    Form 3005  1/01

14995851

                                                                            567005533
                                                        MIN  1000153-0567005533-8

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County of Ventura :
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

SEE SCHUDELE A:

SUBJECT TO COVENANTS OF RECORD.

THE AFORESAID FEE SIMPLE PROPERTY HAVING BEEN PURCHASED IN WHOLE OR IN PART WITH THE SUMS SECURED HEREBY.

Parcel ID Number:                                  which currently has the address of
4142 FELIPE LANE UNIT D
             SIMI VALLEY                                                     [Street]
("Property Address"):                          [City], California 93063     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP®-6A(CA) (0207).01                  Page 3 of 15          Initials:_____          Form 3005  1/01

14995851                                                                 567005533
                                            MIN  1000153-0567005533-8

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



-6A(CA) (0207).01                    Page 6 of 15                    Initials: _____                    Form 3005   1/01

14995851

567005533
MIN   1000153-0567005533-8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

Form 3005  1/01

14995851

567005533
MIN   1000153-0567005533-8

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _____

-6A(CA) (0207).01                    Page 9 of 15                    Form 3005   1/01

14995851                                                      567005533
                                               MIN   1000153-0567005533-8

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

 20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

14995851

567005533
MIN  1000153-0567005533-8

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.


14995851

567005533
MIN   1000153-0567005533-8

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    MARIA C GARZON                -Borrower


_____                    _____ (Seal)
                                                                                  -Borrower


_____ (Seal)                _____ (Seal)
                              -Borrower                                            -Borrower


_____ (Seal)                _____ (Seal)
                              -Borrower                                            -Borrower


_____ (Seal)                _____ (Seal)
                              -Borrower                                            -Borrower


VMP -6A(CA) (0207).01                 Page 14 of 15                    Form 3005   1/01

14995851                                                              567005533
                                                          MIN   1000153-0567005533-8

State of California
County of

} ss.

On _____ before me, _____ personally appeared

_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

Initials:_____

Form 3005   1/01

-6A(CA) (0207).01

Page 15 of 15

14995851

567005533
MIN   1000153-0567005533-8

RECORDING REQUESTED BY
SPL

AND WHEN RECORDED MAIL TO:
Maria C. Garzon
4142 Felipe Lane, Unit D
Simi Valley, CA  93063

20070320-00058669-0  1/3
Ventura County Clerk and Recorder
Philip J. Schmit
03/20/2007 08:00:00 AM
65477 $565.20 RE

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 616-0-190-225                Order No.: 15244528                Escrow No.: 1-33286BC

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $552.20
[  ]   computed on full value of property conveyed, or
[  ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[  ]   unincorporated area;  [  ]  City of  Simi Valley , and.

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**Jackie Palau, a Married Woman as Her Sole and Separate Property**

hereby GRANT(S) to  **Maria C. Garzon, an Unmarried Woman**

the following described property in the City of **Simi Valley**, County of **Ventura** State of California;

**See Exhibit "A" attached hereto and made a part hereof.**

_Jackie Palau_
Jackie Palau

Document Date:  February 7, 2007

STATE OF CALIFORNIA              )SS
COUNTY OF Ventura                )
On 2/15/2007           before me,  JESSE ANTONIO GUTIERREZ                , a Notary Public,
personally appeared  Jackie  Palau ,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _Jesse Antonio Gutierrez_

JESSE ANTONIO GUTIERREZ
Commission # 1474580
Notary Public - California
Ventura County
My Comm. Expires Mar 6, 2008

COPY   Exhibit E

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

## LEGAL DESCRIPTION

A CONDOMINIUM COMPRISED OF::

Parcel 1:

Unit No. 13 as shown and defined upon the Condominium Plan Phase 2, (together with any amendments thereto), for a portion of Lot 1 of Tract No. 5396, in the City of Simi Valley, County of Ventura, State of California, as per Map recorded in Book 150, Page 23 through 26, inclusive of Maps, in the office of the County Recorder of said County, which Condominium Plan was recorded October 14, 2004, as Document No. 20041014-0277280 of Official Records.

EXCEPT all oil, gas, minerals and other hydrocarbon substances in and under said land, without the right of entry to the surface and without any entry to the subsurface thereof to a depth of 500 feet for the development or removal of said substances, as reserved by Augusta Luella Morton, et al., in deed recorded July 23, 1963, in Book 2359, Page 582 of Official Records; as provided in the deed from Robert F. Buckheim, et al., recorded September 27, 1963, in Book 2399, Page 373 of Official Records, and as provided in the deed from Shane Homes, Inc., recorded May 12, 1966, in Book 2986, Page 420 of Official Records.

Parcel 2:

An undivided one-fifteenth (1/15) interest as a tenant in common in and to the common area as described in the Condominium Plan reffered to above.

Parcel 3:

A non-exclusive easement for access, drainage encroachment, maintenance repair and for other purposes as described in said Condominium Plan, and the Declaration of Covenants, Conditions and Restrictions for Tract No. 5396.

Parcel 4:

A exclusive easement for balcony, porch, yard purposes and air condition compressor as shown and defined upon the Condominium Plan as exclusive use areas, and as described in the Declaration for said Tract.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of _Ventura_ _____ } ss.

On _2/15/07_ _____ before me, _JESSE ANTONIO GUTIERREZ_ _____
　　　Date　　　　　　　　　　　　　　　　Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Jackie Palau_ _____
　　　　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Jesse Antonio Gutierrez_
　　　　　　Signature of Notary Public

[Notary Seal: JESSE ANTONIO GUTIERREZ
Commission # 1474580
Notary Public - California
Ventura County
My Comm. Expires Mar 6, 2008]

――――――――― OPTIONAL ―――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Grant Deed_ _____

Document Date: _2/7/07_ _____ Number of Pages: _1_ __

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _Jackie Palau - JACKIE PALAU_

☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing:_____

[RIGHT THUMBPRINT OF SIGNER
Top of thumb here]

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org　　Prod. No. 5907　　Reorder: Call Toll-Free 1-800-876-6827

Recording Requested By
ServiceLink

WHEN RECORDED MAIL TO: 

**CAPITAL ONE, NA**
**3901 N. DALLAS PKWY**
**BLDG 1 FLOOR 1**
**PLANO TX 75093**

TRA # **009061**
Trust No. **1247199-11**
Loan No. **XXXXXX5533**

20101118-00180281-0 1/3
Ventura County Clerk and Recorder
MARK A. LUNN
11/18/2010 08:00:00 AM
467089 $21.00 RE

Space Above This Line For Recorder

MAIL TAX STATEMENT TO:

Same as above

Documentary Transfer Tax $.00
X Grantee was/was not the foreclosing beneficiary.
consideration **$292,500.00**
unpaid debt **$531,003.89**
non exempt amount $
__Computed on the consideration or value of property conveyed.
__Computed on the consideration of value less liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent **Alwin Almazan**
AP# 616-0-190-225

240123   *Das not have authority*

# TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**CAPITAL ONE, N.A.** (herein called Grantee) the real property in the county of **VENTURA**, State of California described as follows:

**PARCEL 1: UNIT NO. 13 AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN PHASE 2, (TOGETHER WITH ANY AMENDMENTS THERETO), FOR A PORTION OF LOT 1 OF TRACT NO. 5396, IN THE CITY OF SIMI VALLEY, COUNTY OF VENTURA, STATE OF CALIFORNIA, MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.**
The street address and other common designation, if any, of the real property described above is purported to be:
**4142 FELIPE LANE UNIT D**
**SIMI VALLEY CA 93063**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**MARIA C GARZON, AN UNMARRIED WOMAN** as Trustor, recorded **March 20, 2007**, as Document No. 20070320-00058670, in Book XXX, page XXX, of Official Records in the Office of the Recorder of **VENTURA** County, California; and pursuant to the Notice of Default recorded **October 27, 2009**, as Document No. 20091027-00175582 in Book XX, page XX of Official Records of said County, Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

*Maria C. Garzon*

TDUSCA.DOC                    Page 1 of 2                    Rev. 05/04/10



*Exhibit F*

TRA #    009061
Trust No. 1247199-11
Loan No. XXXXXX5533

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public
auction on **October 29, 2010** to said Grantee, being the highest bidder therefore, for **$292,500.00 cash**, lawful
money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

CAL-WESTERN RECONVEYANCE CORPORATION

Dated:   October 29, 2010

Yvonne J. Wheeler, A.V.P.

State of California )
County of San Diego)

On **NOV 1 2 2010**_____ before me,  Rosalyn Hall_____,
a Notary Public, personally appeared _____ Yvonne J. Wheeler _____, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

(Seal)

ROSALYN HALL
COMM. #1793727
Notary Public - California
San Diego County
My Comm. Expires Mar. 16, 2012

**THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.**

TDUSCA.DOC

Page 2 of 2

Rev. 05/04/10

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **VENTURA**, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

UNIT NO. 13 AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN PHASE 2, (TOGETHER WITH ANY AMENDMENTS THERETO), FOR A PORTION OF LOT 1 OF TRACT NO. 5396, IN THE CITY OF SIMI VALLEY, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 150, PAGES 23 THROUGH 26 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH CONDOMINIUM PLAN WAS RECORDED OCTOBER 14, 2004 AS DOCUMENT NO. 20041014-0277280 OF OFFICIAL RECORDS.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT THE RIGHT OF ENTRY TO THE SURFACE AND WITHOUT ANY ENTRY TO THE SUBSURFACE THEREOF TO A DEPTH OF 500 FEET FOR THE DEVELOPMENT OR REMOVAL OF SAID SUBSTANCES, AS RESERVED BY AUGUSTA LUELLA MORTON, ET AL., IN DEED RECORDED JULY 23, 1963, IN BOOK 2359, PAGE(S) 582 OF OFFICIAL RECORDS; AS PROVIDED IN THE DEED FROM ROBERT F. BUCKHEIM, ET AL., RECORDED SEPTEMBER 27, 1963, IN BOOK 2399, PAGE(S) 373 OF OFFICIAL RECORDS, AND AS PROVIDED IN THE DEED FROM SHANE HOMES, INC., RECORDED MAY 12, 1966, IN BOOK 2986, PAGE(S) 420 OF OFFICIAL RECORDS.

PARCEL 2:

AN UNDIVIDED ONE-FIFTEENTH (1/15TH) INTEREST AS A TENANT IN COMMON AND TO THE COMMON AREA AS DESCRIBED IN THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL 3:

A NON-EXCLUSIVE EASEMENT FOR ACCESS, DRAINAGE, ENCROACHMENT, MAINTENANCE, REPAIR AND FOR OTHER PURPOSES AS DESCRIBED IN SAID CONDOMINIUM PLAN, AND THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR TRACT NO. 5396.

PARCEL 4:

A EXCLUSIVE EASEMENT FOR BALCONY, PORCH, YARD PURPOSES AND AIR CONDITION COMPRESSOR AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN AS EXCLUSIVE USE AREAS, AND AS DESCRIBED IN THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RESERVATION OF EASEMENTS FOR PASEO DEL SOL, RECORDED ON JULY 28, 2004 AS INSTRUMENT NO. 2004-0207688 OF OFFICIAL RECORDS (TOGETHER WITH ANY AMENDMENTS THERETO, COLLECTIVELY, THE "DECLARATION"), AND IN THE NOTICE OF DESIGNATION OF PHASE AND SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PASEO DEL SOL (PHASE 2) (TOGETHER WITH ANY AMENDMENTS THERETO, COLLECTIVELY, THE "NOTICE"), WHICH WAS RECORDED ON OCTOBER 14, 2004 AS INSTRUMENT NO. 2004-0277281 IN OFFICIAL RECORDS. COUNTY OF VENTURA, STATE OF CALIFORNIA.